ACCEPTED
04-15-00114-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/6/2015 8:39:13 PM
KEITH HOTTLE
CLERK

No 04-15-00114-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

08/06/15 8:39:13 PM

KEITH E. HOTTLE
Clerk

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

HARI PRASAD KALAKONDA AND LATHA KALAKONDA, *Appellants*

v.

ASPRI INVESTMENTS, LLC, *Appellee*

On Appeal from 45th Judicial District Court
of Bexar County, Texas, Cause No: 2014-CI-16394,
the Honorable Judge Karen H. Pozza, presiding.

## APPELLANTS' BRIEF

**Hari Prasad Kalakonda**
5002, Newcastle Ln,
San Antonio, Texas – 78249
Tel: 210 687 4988
email: smfoodmart@yahoo.com
PRO-SE APPELLEANT

**Latha Kalakonda**
5002, Newcastle Ln,
San Antonio, Texas – 78249
Tel: 210 687 4988
email: smfoodmart@yahoo.com
PRO-SE APPELLEANT

ORAL ARGUMENT REQUESTED

i

# I.   IDENTITY OF PARTIES AND COUNSEL

| APPELLANTS: | APPELLANTS' COUNSEL: |
|---|---|
| Hari Prasad Kalakonda and | *PRO-SE* |
| Latha Kalakonda | *PRO-SE* |

| APPELLE: | APPELLEE'S COUNSEL: |
|---|---|
| **Aspri Investments, LLC.** | **Michael D. Conner (Appellate)** |
| | State Bar No. 04688650 |
| | 1415 Louisiana, 36th Floor |
| | Houston, Texas 77002 |
| | Telephone: (713) 220-9162 |
| | Facsimile: (713) 223-9319 |
| | Email: mconner@hirschwest.com |

**Eric S. Lipper**
**(Trial and Appellate)**
State Bar No. 12399000
1415 Louisiana, 36th Floor
Houston, Texas 77002
Telephone: (713) 220-9182
Facsimile: (713) 223-9319
Email: elipper@hirschwest.com

**Frederick L. Fuhr**
**(Trial and Appellate)**
T.B.A. No. 00798193
107 Landing Blvd., Ste. F
League City, Texas 77573
Telephone 281.332.1400
Facsimile 281.332.8885
Email: ffuhr@aol.com
ATTORNEYS FOR APPELLE

ii

## II.  TABLE OF CONTENTS

I.      IDENTITY OF PARTIES AND COUNSEL ..........................................ii

III.    INDEX OF AUTHORITIES.................................................................. vi

   A. CASES        vi

   B. STATUTES  viii

   C.  OTHER AUTHORITIES        viii

IV.     REFERENCES TO THE APPELLATE RECORD.............................. ix

V.      STATEMENT OF THE CASE ............................................................. 1

VI.     STATEMENT REGARDING ORAL ARGUMENT ........................... 1

VII.    ISSUES PRESENTED....................................................................... 2

   1. Did the trial court err in confirming the arbitration award when the arbitrator refused to hear evidence pertinent and material to the controversy?2

   2. Did the trial court err in confirming the arbitration award when the arbitrator failed in full disclosures?  Evident partiality of the arbitrator. 2

   3. Did the trial court err in confirming the arbitration award when the arbitrator exceeded his power by making Kalakondas responsible for the award when they are not a party to the agreement under dispute personally?  2

4. Did the trial court err in confirming the arbitration award        2

   a.   err in confirming the arbitration award   that was violated by the Appellee before confirmation of the arbitration award?........................................2

   b.   abused its power confirming the arbitration award by interpreting the award and by not sending for clarification?........................................2

VIII.   STATEMENT OF FACTS ....................................................................3

   1. Overview       3

   2.  The Dispute       3

IX.      SUMMARY OF ARGUMENTS............................................................7

X.       STATEMENT OF ARGUMENT ..........................................................8

   1. Did the trial court err in confirming the arbitration award when the arbitrator refused to hear evidence pertinent and material to the controversy?8

   2.  Did the trial court err in confirming the arbitration award when the arbitrator failed in full disclosures?  Evident partiality of the arbitrator.        12

      A.   Pre Arbitration:..........................................................................17

      B.   Post Arbitration: ........................................................................18

   3.  Did the trial court err in confirming the arbitration award when the arbitrator exceeded his power by making Kalakondas responsible for

the award when they are not a party to the agreement under dispute personally?  23

4.  Did the trial court err in confirming the arbitration award        24

a.  that was violated by the Appellee before confirmation of the arbitration award? ................................................................................... 24

b.  by interpreting the award and by not sending for clarification? ...... 27

XI.  PRAYER ............................................................................................... 30

XII.  CERTIFICATE OF COMPLIANCE ..................................................... 31

XIII.  CERTIFICATE OF SERVICE ............................................................. 32

XIV.  INDEX OF APPENDIX ...................................................................... 33

# III. INDEX OF AUTHORITIES

## A. CASES

1. *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 234 (Tex. App.–Houston [14th Dist.] 1993, writ denied). ....................................................9

2. *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203-04 n.4 (1956).......................9

3. Brown v. Witco Corp., 340 F.3d 209 (5th Cir.2003) ...............................28

4. Burlage v. Superior Court of Ventura Cty., 178 Cal. App. 4th 524 (2d Dist. Oct. 20, 2009), rev. denied, No. S178328 (Cal. Sup. Ct. Jan. 21, 2010),...............................................................................................10

5. Burlington N. R.R. Co. v. TUCO, Inc., 960 S.W.2d 629, 636 (Tex. 1997) ....................................................................................................13

6. Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 147 (1968) ...............................................................................................13

7. *D.H. Blair Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).....................26

8. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217-221 (1985))........26

9. Hall St. Assocs., LLC v. Mattel, 552 U.S. 576, 582 (2008)........................26

10. Hoteles Condado *Beach, La Concha and Convention Center v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.1985)................................11

11.   In re D. Wilson Constr. Co., 196 S.W.3d 774, 779 (Tex. 2006). ............... 3

12.   *Jones v. Brelsford*, 390 S.W.3d 486, 494 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ..................................................................................... 23

13.   Karlseng II, 2011 WL 2536504 at *8; ........................................................ 13

14.   *Kosty v. South Shore Harbour Cmty. Ass'n*, 226 S.W.3d 459, 464 (Tex. App.—Houston [1st Dist.] 2006, pet denied); ........................................... 9

15.   KPMG, LLC v. Cocchi, 132 S.Ct. 23, 24-26 (2011); ................................. 25

16.   *Mulhall v. UNITE HERE Local 355,618 F.3d 1279,1293 (11th Cir. 2010)* .. 26

17.   *Oil, Chemical & Atomic Workers International Union, Local 4-367 v. Rohm & Haas, Texas, Inc., 677 F.2d 492, 495 (5th Cir.1982)* .................................. 28

18.   *Olick, 151 F.3d at 139.* .............................................................................. 29

19.   Ometto, 2013 WL 174259 at *4 .................................................................. 12

20.   *San Antonio Newspaper Guild Local 25 v. San Antonio Light Division*, 481 F.2d 821, 824 (5th Cir.1973) ...................................................................... 28

21.   *See Sirtex Oil Industries, Inc. v. Erigan, 403 S.W.2d 784 (Tex 1966).* ............. 24

22.   Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986) ................................. 26

23.   Thian Lok Tio v. Washington Hosp. *Center, 753 F.Supp2d 9, 17 (2010)* .. 13

## B. STATUTES

1. Section 10(a)(3), ....................................................................................................... 10

2. Section 9 U.S.C. § 10(a)(3) ..................................................................................... 8

3. TEX PR. CODE ANN. § 93.012 ............................................................................ 21

4. Tex. Bus. and Comm. Code § 17.46(b)(2), (3), (12), and (24) and § 17.50(a)(3) ........................................................................................................ 8

5. Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") ............ 8

## C. OTHER AUTHORITIES

1. AAA The Code of Ethics for Arbitrators in Commercial Disputes ................ 13

2. American Arbitration Association (AAA). ....................................................... 3

3. American Bar Association (ABA) Code of Ethics for Arbitrators in Commercial Disputes (2004) ........................................................................... 14

4. Federal Arbitration Act (FAA) ........................................................................ 3

5. Texas Arbitration Act(TAA) ............................................................................ 3

# IV.   REFERENCES TO THE APPELLATE RECORD

## CLERK'S RECORD

| Referred as | Filed Date | Appellate Cause No. |
|---|---|---|
| 1 CR | 04/02/2015 | 04-15-00114-CV |
| 2 CR | 06/09/2015 | 04-15-00114-CV |

[1 CR 21-25]:  First Clerk Record from page 21 to 25

## REPORTER'S RECORD

| Referred as | Filed by Reporter | Filed date | Appellate Cause No. |
|---|---|---|---|
| 1 RR | Tracy Ray Plummer | 05/11/2015 | 04-15-00114-CV |
| 2 RR | Mary Hellen Vargas | 05/11/2015 | 04-15-00114-CV |
| 3 RR | Erminia Uviedo | 05/13/2015 | 04-15-00114-CV |
| 4 RR | Tracy Ray Plummer | 05/18/2015 | 04-15-00114-CV |

1 RR 21-25:  First Reporter's Record from page 21 to 25

## V.    STATEMENT OF THE CASE

This is an appeal to vacate the Arbitration award [1 CR 6-10] and remand for Arbitration.    This appeal follows trial court's order confirming arbitration award with cause number 2014-CI-16394 [1 CR 175-176].

## VI.    STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that an oral argument will aid the Honorable Court in filling any gaps in the briefs and will aid the Court get clarifications if any by live questioning and hence come to an informed conclusion.

## VII.    ISSUES PRESENTED

1. Did the trial court err in confirming the arbitration award when the arbitrator refused to hear evidence pertinent and material to the controversy?

2. Did the trial court err in confirming the arbitration award when the arbitrator failed in full disclosures?  Evident partiality of the arbitrator.

3. Did the trial court err in confirming the arbitration award when the arbitrator exceeded his power by making Kalakondas responsible for the award when they are not a party to the agreement under dispute personally?

4. Did the trial court err in confirming the arbitration award

   a. err in confirming the arbitration award  that was violated by the Appellee before confirmation of the arbitration award?

   b. abused its power confirming the arbitration award by interpreting the award and by not sending for clarification?

2

## VIII.    STATEMENT OF FACTS

### 1. Overview

Shubha, LLC. (Kalakondas are the owners of Shubha, LLC) assumed the commercial lease ("lease") [1 CR 237-256] of the convenience store/gas station located at 4610 Seguin Rd., San Antonio, TX 78219 ("the premises") on or about March 18, 2008. Aspri Investments, LLC ("Aspri") is the owner of the premises and the landlord under the lease. Both have entered into a contract (lease agreement) which is valid until February 28th, 2017.  The contract contains a compulsory arbitration clause to resolve all the disputes related to the lease [1 CR 257-258].  The arbitration is governed by Federal Arbitration Act (FAA) pursuant to rules of American Arbitration Association (AAA). The arbitration under consideration here was held under the same act and rules [1 CR 6-7]. The FAA and Texas Arbitration Act(TAA) are not mutually exclusive. See In re D. Wilson Constr. Co., 196 S.W.3d 774, 779 (Tex. 2006). Rather, "the FAA only preempts contrary state law, not consonant state law." *Id.*

### 2.    The Dispute

The arbitration concerned **the** lease assumed from "AASHIQ Inc." by SHUBHA LLC" for the premises with consent [1 CR 260-261] from Aspri.

3

The dispute arose when the tenant requested for the accounting and verifiable documents [1 CR 275-277, 1 CR 265-271 ] in writing for the money spent by landlord on tenant's behalf, collected by landlord in the name of monthly escrow over and above what the lease permits. Instead of showing the accounting and corresponding invoices for the escrow money collected from years, Aspri resorted to default notices, threats of closing the business, threats of cancelling licenses[1 CR 451-472] and forced the Kalakondas into subsequent arbitration. As per the lease Aspri should not be holding licenses [1 CR 250 section 12.1] but held them and used them to blackmail Kalakondas. Kalakondas have requested this information about accounting, in writing, only after several and repeated cordial verbal requests from the beginning of the lease assumption. Aspri always contended that Kalakondas have no rights [1 CR 280-281] in many aspects [1 CR 435-438, 425-427] as explained later in this brief. During the discovery it was discovered that Aspri has hired third parties before the Kalakondas assumed the lease, which they did not disclose while assuming the lease (Deceptive Trade Practice)[1 CR 257-258], to do tasks that he was not supposed to be doing under the lease. Aspri was buying insurance which is not only as per the lease but was also more than what the lease permits, [1 CR 290-293] without any coverage for tenants but charging the tenant [1

4

CR 239 Section 4.4], protesting the property taxes by hiring third parties [ 1 CR 280, 369-371] when he has no duty to do so under the lease [1 CR 241-242: Section 5.5 and 5.6] and charging the tenant even when no tax protest was filed[1 CR 279-280, 428-434]. Kalakondas never defaulted on payment of rent and other monies and made sure that the landlord had enough escrow as security including the unaccounted escrow amount. The solution was to simply show the service performed, show the invoice for the service, and show the corresponding lease clause that allows this expense. The landlord induced Kalakondas into signing the lease assumption agreement [1 CR 257-258] without disclosing the preexisting agreements with third parties while stating in the consent to the assignment[1 CR 260] that he has no duty other than what is stated in the lease while having agreements with third parties to do the exactly opposite.

We agree that the lease is a triple net lease. We never disputed that and is not disputing now, but the lease, which both of us have agreed to follow have some obligations and responsibilities. The property leased is independent with only Kalakondas as the tenants and is not part of a strip center. Just because it is a triple net lease, land lord cannot interfere in our business against peaceful enjoyment doctrine [1 CR 240 Section 4.5] and hire a fortune 500 company to clean our

5

restrooms, fix a door knob or any other day to day maintenance and charge back to the Kalakondas.   As a business man we wanted to have control over our expenses. We should be able to make a decision if an expense is necessary or worth it, or is it something we can do ourselves and save.   But it is not the case here.   Landlord collects money, spends his way, hires his way and never shows an account and how he is authorized to spend that money the way he spends except sending a single page statement at the end of the year without any details.   For example in the references [1 CR 373, 374, 377, 377, 378, 380, 381, 383, 384, 386, 387] lease doesn't authorize management charges and testing charges enumerated in the above references and positively confirms that it is the responsibility of the landlord [1 CR 254 Sec. 15.16].   No accounting was provided for the year 2013 and 2014(The lease was terminated on October 24th, 2014 and tenants evicted [1 CR 81-83] (all disputes related to the lease are subject to arbitration)) though the lease calls for such accounting by February 1st for every year for the previous year [1 CR 253-254 Section 15.14].

The details, proofs and corresponding authorizations have been asked several times but were never answered.  Once we started asking in writing, we landed up in arbitration.

The parties went through arbitration as required by the lease for alleged breaches, with claims and counter claims. The arbitrator awarded around $66,000 to Aspri and denied all other claims in the arbitration including termination of the lease and taking possession of the premises [1 CR 212-216] sought by Aspri.

## IX.   SUMMARY OF ARGUMENTS

The principle that arbitrators have the ability to be wrong has established limits under the FAA. First an arbitrator cannot, refuse to hear evidence "pertinent and material to the controversy", second an arbitrator's code of ethics demands that he disclose any information whether material or not, that to an objective observer create a reasonable impression of arbitrators partiality and err in favor of disclosure when in doubt. Third an arbitrator should make an award on matters only submitted to them or fully covered under parties' arbitration agreement without exceeding his powers as arbitrator. In the present case the arbitrator also manifestly disregarded the law of the land and intentionally misinterpreted the lease which any objective person would object to. Additionally the trial court abused its power by interpreting the arbitration award instead of confirming as it says in words.

# X.   STATEMENT OF ARGUMENT

**1. Did the trial court err in confirming the arbitration award when the arbitrator refused to hear evidence pertinent and material to the controversy?**

Kalakondas, well before the arbitration, in a supplemental Counter Petition [1 CR 59-62] plead that the actions of Aspri constituted breaches of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), and specifically Tex. Bus. and Comm. Code § 17.46(b)(2), (3), (12), and (24) and § 17.50(a)(3) . Aspri knowingly and with intent to induce the Defendants (Kalakondas) didn't disclose the existence of prior agreements with Tax protesting agency [1 CR 369-371] and Titan management company [1 CR 365-368] while signing the lease assumption agreement [1 CR 257-258].

Section 9 U.S.C. § 10(a)(3) of the FAA lists three separate grounds for vacatur: "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." Arbitrator prohibited the appellants from offering any testimony and evidence [1 CR 63] though the other party was neither surprised nor prejudiced. By doing so, Arbitrator engaged in misconduct by effectively refusing to

8

hear and consider evidence pertinent and material to the controversy; engaged in misbehavior by which Kalakonda's rights have been prejudiced. Arbitrator had a choice to admit the evidence and at least hear the arguments and make a ruling of his choice. Arbitrators are not bound by the rules of evidence. See *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203-04 n.4 (1956), Nor they are required to hear all the evidence tendered by the parties **as long as each party is given an adequate opportunity to present evidence and arguments.** *Kosty v. South Shore Harbour Cmty. Ass'n*, 226 S.W.3d 459, 464 (Tex. App.—Houston [1st Dist.] 2006, pet denied); *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 234 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Arbitrator's prior relationship with attorneys [1 CR 357-358] and his multi property relationship with Aspri to arbitrate his other leases [1 CR 359-361] which he did not disclose neither before nor after the arbitration, prevented the arbitrator from admitting evidence detrimental to Aspri. This is not a procedural misconduct. The arbitrator excluded or prohibited evidence [ 1 CR 63], which if admitted and credited would have resulted in definitely different outcome. Even if the outcome would not necessarily have been different, Kalakondas were not afforded a fundamentally fair hearing even though the arbitrator would not hear the preferred evidence. *Burlage v. Superior Court of Ventura Cty.*, 178 Cal. App. 4th 524 (2d

9

*Dist. Oct. 20, 2009), rev. denied, No. S178328 (Cal. Sup. Ct. Jan. 21, 2010),* is an excellent example of the type of case where relief for excluding material evidence was warranted and granted. When Kalakondas have signed the arbitration agreement knowingly or unknowingly, presumed that the arbitrator will be neutral and would allow them to present material and pertinent evidence supporting their position in any dispute and afford them a fair hearing. While refusing to admit the evidence, the Arbitrator states the following[1] in his order [1 CR 7]. Evidence, documents and testimony that the arbitrator prohibited was not part of the hearing and Kalakondas had deprived of fair hearing.

However, not all refusals to hear evidence are misconduct but US Court of Appeals, First Circuit held that, under Section 10(a)(3), "[v]acatur is appropriate only when the exclusion of relevant evidence `so affects the rights of a party that it may

---

[1] the Arbitrator. Witnesses were called and sworn, and the witnesses presented testimony and evidence from July 24 through July 26, 2014. All testimony and exhibits so offered were admitted. Objections made to evidence from witnesses or documents or exhibits were considered by the Arbitrator, so that the objectionable material, if any, was given its appropriate weight, but all was admitted. The proceeding was not transcribed by a certified court reporter.

be said that he was deprived of a fair hearing.'" Hoteles Condado *Beach, La Concha and Convention Center v. Union De Tronquistas Local 901,* [763 F.2d 34](), 40 (1st Cir.1985) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* [397 F.2d 594](), 599 (3rd Cir.1968)).  Here Kalakonda's rights have been prejudiced and all the evidence prohibited could not be produced and a fair hearing was deprived.

**2. Did the trial court err in confirming the arbitration award when the arbitrator failed in full disclosures? Evident partiality of the arbitrator.**

The U.S. Federal Arbitration Act (FAA) provides that a federal district court may vacate an arbitration award, among other grounds, "where there was evident partiality or corruption in the arbitrators, or either of them" 9 U.S.C. §10(a)(2). The ground is mandatory, not discretionary. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a) ("On application of a party, the court *shall* vacate an award. . . .") (emphasis added). What is evident partiality? Several courts have ruled but only two versions exist. Evident partiality as per the Second Circuit court, under which a court "may only find evident partiality sufficient to vacate an award when a **reasonable person, considering all of the circumstances, would have to conclude** the arbitrator was partial to one side." *Ometto*, 2013 WL 174259 at *4 (internal quotations marks omitted). The court noted that under the Second Circuit standard "the arbitrator is quite unlike a judge, who can be disqualified in any proceeding in which his impartiality might be reasonably questioned." *Id.* (internal quotation marks omitted). Whereas, Ninth Circuit standard only requires "an impression of possible bias", to declare evident partiality. The U.S. federal circuit courts are evenly split as to which is the correct standard of "evident partiality". Under Texas law, evident partiality is established by the nondisclosure of facts

12

creating an impression of partiality, not by any evidence of bias in the performance of the arbitrator's duties. *Karlseng II*, 2011 WL 2536504 at \*8; *see Burlington N. R.R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 636 (Tex. 1997) (citing *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 147 (1968)). *But see, e.g., Borst v. Allstate Ins. Co.*, 717 N.W.2d 42, 45 (Wis. 2006) ("Evident partiality cannot be avoided simply by a full disclosure and a declaration of impartiality.").

We consider the stringent version adapted by Second Circuit court and would adapt the standard demanded by D C Circuit in *Thian Lok Tio v. Washington Hosp. Center, 753 F.Supp2d 9, 17 (2010)* (a party alleging "evident partiality bears a heavy burden to establish specific facts that indicate improper motives on the part of an arbitrator.") (internal quotations omitted). We will not rely on speculative and conclusory allegations to support our claim.

The arbitration was conducted as per FAA and following AAA rules of commercial arbitration [1 CR 6-7]. AAA Code of Ethics for Arbitrators in Commercial Disputes [Appendix 1], CANON I and CANON II specify ethical

13

standards arbitrators have to follow by disclosure. CANON II.A.(2) states[2] "An arbitrator should disclose any interest or relationship likely to affect impartiality or which might create an appearance of partiality." American Bar Association (ABA) Code of Ethics for Arbitrators in Commercial Disputes (2004)[Appendix 2] is as stringent on disclosures by arbitrators as AAA Code of Ethics for Arbitrators and incorporates all CANONs from I to X, pursuant to which the Arbitrator said he made his disclosures.

Mr. Jerry Hoover, was an appointed arbitrator by Aspri Investments, unilaterally without consultation and acceptance in a take it or leave it assignment of lease around March, 2008. No disclosures were made at the time of appointment by the Arbitrator. No disclosures were made during the course of the lease of any changes in business relationships with Aspri. When the arbitration ensued the Arbitrator disclosed his business/professional relationship with the attorney Mr.

---

[2] "Persons who are requested to serve as arbitrators should, before accepting, disclose any known existing or past financial, business, professional or personal relationships **which might reasonably affect impartiality or lack of independence in the eyes of any of the parties**. For example, prospective arbitrators should disclose any such relationships which they personally have with **any party or its lawyer,** with any co-arbitrator, or with any individual whom they have been told will be a witness. They should also disclose any such relationships involving their families or household members or their current employers, partners, or professional or business associates that can be ascertained by reasonable efforts;"

Frederick Fuhr [1 CR 355-356] who is Aspri's first long standing counsel. The Arbitrator mediated five cases with Mr. Fuhr. Approximately ten days before the date of arbitration Aspri appointed another attorney Mr. Eric Lipper who and his firm had an extensive business/professional relation with the Arbitrator in arbitrating and mediating several cases [1 CR 357-358]. The disclosure was made one day prior to the date of arbitration. The failure of the arbitrator to timely disclose (when he had at least ten days' time), deprived Kalakondas' ability to object to the arbitrator's continued service. It is impossible to read, do further enquiry and hence object when the arbitration is to be held next day and when we need to travel to Houston for Arbitration. It can be conclusively proven from the emails [1 CR 363] that Mr. Eric Lipper was hired prior to July 15th, 2014 and arbitrator was aware of it at least on July 15th. The venue was changed by the Arbitrator to Houston which as per the lease must be held in Bexar County against the wishes of Kalakondas [1 CR 354].].

During this whole process of disclosure, the Arbitrator did not disclose his business/professional relationship with Aspri Investment, Inc. whereas ethical standards required that the disclosure should be about both party and their attorneys. Information must be disclosed whether material or not. Being Aspri

designated arbitrator for this location without any negotiation and acceptance and for several other locations that Aspri owns in Texas and other places across the country, under different names, the arbitrator cannot and could not be neutral and independent due to conflict of interest as arbitrators are paid by the parties unlike government Judges. One concern the disclosure standards address is the "bias, or appearance of bias, that may flow from one side in an arbitration being a source or potential source of additional employment, and thus additional income, for the arbitrator." This situation can definitely affect the impartiality of the arbitrator. Studies show that any time one entity depends on another entity for a large percentage of their business livelihood, some systematic bias in favor of that company may develop. While it is true that Mr. Jerry Hoover is the arbitrator for several of Plaintiff's properties, the arbitrator never declared or disclosed that he is the chosen and preselected arbitrator for the other properties [1 CR 359-361] other than the current one. In a routine conversation with another business man, Kalakondas were able to gather a document [1 CR 359-361] which proved the existence of business/professional relationship which the arbitrator should have disclosed. Due to this conflict of interest the arbitrator could not make an impartial decision based on the facts and evident partiality is reflected in his award.

The following list presents a systematic approach by Aspri from the beginning to take advantage their acquaintance with the arbitrator to their advantage.

**A. Pre Arbitration:**

a. Arbitrator was preselected without consultation and consent.

b. The same arbitrator was selected for multiple properties owned by Aspri, essentially hiring the arbitrator for most if not all of his properties. [1 CR 359-361].

c. As per initial disclosures of the arbitrator, the arbitrator had prior working relations ship with Mr. Frederick Fuhr in five instances of mediation. [1 CR 355-356].

d. The location of the arbitration was hijacked to Houston against the lease and law to Houston for personal convenience and against the assertions of Shubha LLC. [1 CR 354].

e. Hired another attorney Mr. Eric Lipper in addition to Mr. Frederic Fuhr who, not only had a close working relationship with the arbitrator in 14 instances but also his firm Hirch & Westheimer, PC in additional 11 instances. [1 CR 357-358].

17

f. None disclosed the multi property relationship between Aspri Investments and the Arbitrator. [1 CR 359-361].

g. Refused to allow and hear evidence detrimental to Aspri and pertinent and material to the controversy [ 1 CR 63].

h. Kalakondas have been slowly and steadily pulled into this loop without them knowing what is happening.

B. **Post Arbitration:**

i. Section 5.5 and 5.6 of the lease [1 CR 241-242] states that the Kalakonda's have the right to protest property taxes and Aspri shall not join any such proceedings unless required otherwise by law. Texas law permits tenants to protest the property taxes. But, Aspri hired a third party, American Property Tax Service, Inc., to protest the property taxes [1 CR 369-371] and charged Kalakondas the fee [1 CR 373,377,380,383,386] which is disproportional to the savings achieved and far away from industry standard or range. Aspri argues that Kalakonda's have no right [1 CR 279] and also in his deposition [1 CR 428-435]. It is important to notice that Section 5.1 of the lease has the wording "(unless specified otherwise in the

18

Lease)".  Section 4.4 of the lease also has the wording "except as may be required in this lease".  The Lease is a twenty page document which in the absence of the above wording is only a four page document.  The arbitrator completely misread or intentionally ignored the above wording in making the award [1 CR 214 item (C)] which clearly shows evident partiality and result of it.

j.  Section 15.16 of the lease [1 CR 254-255] entitles Aspri to conduct tests "at any time" for the purpose of environmental evaluation and monitoring etc., but doesn't allow Aspri to charge Kalakondas unless those tests are necessitated by contamination occurring during the tenancy of Kalakondas.  No contamination occurred during the tenancy of Kalakondas but have been charged to Kalakondas [1 CR 373,377,380,383,386] in the name of Titan Management fees.  The arbitrator stopped reading the lease on page three or four intentionally by not reading the wording "except......" in making the award [1 CR 214 item (C)] which clearly shows evident partiality and result of it.

k.  Section 15.15 of the lease [1 CR 254-255] says "Landlord shall pay any and all obligations that it has with respect to its lenders or any preexisting

19

agreements". The agreements with American Property Tax Service, Inc., Titan Management Company, and any other still undisclosed agreements are preexisting agreements and hence Aspri should pay any and all the obligations with respect to such agreements. Again, the arbitrator stopped reading the lease on page three or four intentionally by not reading the wording "except......" in making the award [1 CR 214 item (C)] which clearly shows evident partiality and result of it.

l. Aspri indulged in fraud in the inducement for the reasons stated in the supplemental Counter Petition [1 CR 59-62]. The elements of fraud are that: (a) a material representation was made; (b) the representation was false; (c) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (d) the speaker made the representation with the intent that the other party should act upon it; (e) the party acted in reliance on the representation; and (f) the party thereby suffered injury. Each of these elements is true in this case.

As per Section 6.4 [1 CR 243-244] of the lease tenant should buy the insurance and deliver to landlord as proof of purchase and indemnify the

landlord etc. Aspri from the day one reiterated that tenant has no right to purchase insurance [1 CR 280] and also during the deposition of Aspri's owner Sammy Virani says the same [1 CR 413-415,425-427,435-438] and confirms that they did not allow the tenants to buy insurance. Having been heard of all these evidence, and clear ambiguity in the lease because Aspri's two attorneys and the owner of Aspri all have their own interpretations [1 CR 94,335] (According to Mr. Lipper, Kalakonda have to purchase the insurance), [1 CR 280] (According to Mr. Fuhr, Kalakonda's have no right to purchase insurance) [1 CR 427](According to owner Sammy Virani, he has to buy and bill the tenant). In these circumstances the Arbitrator declares lease as unambiguous and declares breach contact and awards [1 CR 214 item (B)]. It is clear in this case that all elements of Fraud are satisfied and Kalakonda's have suffered injury because of actions of Aspri, but the Arbitrator declares no fraud [1 CR 215(D)]. All these decisions conclusively prove the partiality of the arbitrator in making his decisions.

m. Aspri breached the contract on day one by charging $3,000 to Kalakondas, while assuming the lease as Lease Assignment Fee which is not specified in

21

the lease. This is against the Texas law TEX PR. CODE ANN. § 93.012 as there is no such provision exists in the lease. Arbitrator while making a decision refused follow the law [1 CR 215(D)] of the land and reasoned that the claim was delayed and waived which is again against Tex. R. Civ. P. Rem. Code §16.069 where it says the counterclaim is not barred by limitation as the counterclaim arises out of the same transaction or occurrence that is the basis of action. Only breach of contract by Aspri is asserted in the arbitration as violation of law by Aspri is not in the purview of the arbitrator and Kalakondas reserve all the rights.

Arbitrator's pre and post arbitration acts clearly demonstrate his partiality and any reasonable person would conclude that the arbitrator was not neutral and showed partiality to Aspri.

**3. Did the trial court err in confirming the arbitration award when the arbitrator exceeded his power by making Kalakondas responsible for the award when they are not a party to the agreement under dispute personally?**

Arbitrator exceeded his powers by deciding issues not submitted to the arbitrators by awarding relief against parties not bound by the arbitration agreement under dispute. Kalakondas have not personally signed the lease assignment document [1 CR 257-259] or the lease that they have assumed from AASHIQ, Inc., and hence are not a party to the agreement under dispute for arbitration. In the request for arbitration [1 CR 352-353] addressed to the arbitrator, Aspri neither addresses nor mentions Kalakonda's personally and seeks any relief personally against them.

The matter of personal liability was not presented to the arbitrator for a decision. Even if presented, there is no basis for awarding against Kalakondas personally. By making an award the Arbitrator exceeded his powers by deciding matters that are not properly before him. In *Jones v. Brelsford*, 390 S.W.3d 486, 494

23

(Tex. App.–Houston [1st Dist.] 2012, no pet.)[3] In the present case, Kalakondas have not signed the Lease in personal capacity and which is the only agreement under dispute here.

Aspri drafted the lease and other documents [1 CR 398,415]. Hence the doctrine of "*Contra Proferentem*"[4] or "*Ambiguity*" must apply and any ambiguities must be interpreted against the drafter. *See Sirtex Oil Industries, Inc. v. Erigan, 403 S.W.2d 784 (Tex 1966).* Even after repeated requests Aspri failed to show that Appellants assumed the lease in personal capacity, signed the arbitration agreement in personal capacity for them to be personally responsible.

**4. Did the trial court err in confirming the arbitration award**

    **a. that was violated by the Appellee before confirmation of the arbitration award?**

---

[3] The Houston Court of Appeals held that arbitrator exceeded its authority in ordering a trust beneficiary to convey her interest in a ranch to a co-beneficiary under a settlement agreement, when the divested beneficiary was not a signatory to the agreement containing the arbitration clause.

[4] Contra Proferentem is a Latin term which means "against the offeror." It refers to a standard in contract law which states that if a clause in a contract appears to be ambiguous, it should be interpreted against the interests of the person who insisted that the clause be included. This usually comes up when a contract is challenged in court. If the court reviews a contract and finds that a clause is ambiguous or could have more than one meaning, it determines which party wanted that clause included and interprets in favor of the other party. However the contra proferentem doctrine has no application when both parties are involved in the wording and the inclusion of the ambiguous clause in the contract.

Aspri violated arbitrator's award before confirmation by terminating the lease, evicting the tenants (Kalakondas) and taking possession of the premises [2 CR 187-189]. Immediately, Kalakondas have asked to review their decision and reserved all their rights to claim damages but received a blunt reply[5] [1 CR 190]. Aspri claimed lease termination and writ of possession of premises in arbitration [1 CR 352-353, 1 CR 351] and in the trial court [1 CR 113] (As the parties are bound by the binding arbitration clause, the trial court has no jurisdiction in adjudicating any disputes or claims associated with the lease and must refer parties to Arbitration. If a complaint/claim contains both arbitrable and non-arbitrable claims, the FAA requires courts to compel arbitration of the arbitrable claims, even where this could result in inefficient maintenance of separate proceedings in different forums. *See KPMG, LLC v. Cocchi, 132 S.Ct. 23, 24-26 (2011); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217-221 (1985)*). The relief requested by Aspri was denied in all the forums.[1 CR 6-10, 1 CR 175] with the statement that "All relief not expressly

---

[5]Mr. Kalakonda,

I will call you tonight. I am not interested in engaging in any discussion that my client has done anything illegal. Any resolution of this matter will be simply that ~ a resolution. If you think that I am going to listen to your bullshit excuses then you have the wrong guy. With that said, I will give you a call tonight to see if we can reach a resolution.
 Eric

granted here in is denied". Even if there exists something in the arbitrator's award that can be enforced, it can be enforced only after confirmation, *See Mulhall v. UNITE HERE Local 355,618 F.3d 1279,1293 (11th Cir. 2010)*( "'[a]rbitration awards are not self-enforcing, [but] . . . must be given force and effect by being converted to judicial orders' on an appropriate motion to confirm or vacate"), (quoting *D.H. Blair Co. v. Gottdiener*, [462 F.3d 95, 104](#) (2d Cir. 2006) (internal quotation marks omitted). As the word implies, *confirmation* of an arbitration award is a summary proceeding that merely converts what is already a final arbitration award into a judgment of the court. *See* Hall St. Assocs., LLC v. Mattel, 552 U.S. 576, 582 (2008)[6]. *See also* Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986). Aspri has terminated the lease though denied by the arbitrator in his award on October 24th 2014[2 CR 187-189]. By doing so Aspri has committed a breach of contract which is arbitrable under parties lease.

Because Aspri breached the award before confirmation, Aspri should be denied right to ask the court to enforce by confirmation, the same award that they

---

[6] ("The Act supplies mechanisms for enforcing arbitration awards: a judicial decree conforming an award, an order vacating it, or an order modifying or correcting it. §§ 9–11. An application for any of these orders will get *streamlined treatment as a motion*, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court.") (emphasis supplied).

26

breached on the other party. Even if they do, the court based on equitable relief should refuse to enforce.

This untimely and arbitrator denied lease termination rendered the award null and void because the payments awarded are no longer relevant. Some payments were up to September 2015, some were up to March 2015 etc. Additionally no accounting was provided for the years 2013 and 2014 years for the payments made by Kalakondas and arbitrator did not make any adjustments to the award for those payments made.

The trial court erred by confirming the award, which was already breached by Aspri and became irrelevant because of the actions of Aspri prior to confirmation.

**b. by interpreting the award and by not sending for clarification?**

In FoF and CoL [2 CR 165] the trial court finds the fact that there exists some documents and evidence from the arbitration which proves that "Plaintiff was clear that if Defendants owed money after the arbitrator rules, the Defendants either needed to "pay up" or move out". We have neither seen any such evidence, nor received any such evidence from Aspri, nor submitted any such evidence to the court nor produced any such evidence during the arbitration. The trial court instead of

27

confirming the award as it says in words started interpreting with non-existing evidence. A court may not interpret the award in order to resolve the ambiguity and implement the award; instead, the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities. *See, e.g.*, Brown v. Witco Corp., 340 F.3d 209 (5th Cir.2003) (Citing *See San Antonio Newspaper Guild Local 25 v. San Antonio Light Division,* 481 F.2d 821, 824 (5th Cir.1973)). Thus, if the arbitration award in question is ambiguous in its scope or application, it is unenforceable. *Id.* The arbitration agreement [1 CR 258] has an interim relief clause where a party may seek interim relief. In the present case no interim relief was sought and hence arbitrator gave a final award only on "claims and counterclaims that have been brought by any of the parties against the other parties with respect to the subject matter ...." [1 CR 10]. Nowhere has it said "pay up or move out" or "...there is no lease left..."[2 CR 146-147 Item 4 Excerpts from 2 RR]. The attorney representing Aspri grossly mislead the court in several instances to gain instant and momentary advantage. A court is required to enforce an arbitration award *only* as written by the arbitrator. *Id ( See Oil, Chemical & Atomic Workers International Union, Local 4-367 v. Rohm & Haas, Texas, Inc.,* 677 F.2d 492, 495 (5th Cir.1982)). Instead of just confirming the award as required by the statute the trial court in its FoF and

28

CoL [ 2 CR 168 Item 15] started deciding matters of *resjudicata* citing a case that doesn't involve arbitraion and started speculating on issues that have not been submitted to the court. When the parties are bound by a binding arbitration agreement the matters of *resjudicata* are to be addressed by the arbitrator in an arbitration forum. This is especially true when the prior dispute was resolved by arbitration when no institutional concerns of integrity and finality of court's own prior judgment are not present. Simply put, the prior-court-judgment exception raises institutional concerns that are not present when the prior adjudication occurred at arbitration. *See Olick,* 151 F.3d at 139. This is true even when the prior arbitration award has been confirmed by court judgment. The trial court missed finding the fact that the parties are bound by a binding arbitration clause. This is an error.

Hence the final award is final on all the issues submitted to the arbitrator but not on the issues that have not yet occurred or that will occur during rest of the lease or rest of the life of Kalakonda's if they happen to be on the lease for the rest of their life. On the same lines the trial court also gave a final judgment because the arbitrator's award was final and the trial court confirmed the whole award in one judgement. The arbitrator's award has a choice to execute in any number of

29

counterparts but the trial court chose to confirm one and final but again only on the claims and counterclaims presented to the arbitrator.

## XI. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellants Hari Prasad Kalakonda and Latha Kalakonda pray that this Court vacate the arbitration award confirmed by the trial court and remand for arbitration based on the grounds presented. Further we pray that the court confirm that the final award and final judgement is only on issues that have been presented to the arbitrator.

Respectfully Submitted

/s/Hari Prasad Kalakonda
/s/ Latha Kalakonda

Hari Prasad Kalakonda
Latha Kalakonda
Pro Se Appellants

## XII.    CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P.9.4 (e) because it has been prepared in a conventional typeface no smaller than 14-point font for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 5766 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(l).

/s/ Hari Prasad Kalakonda
/s/ Latha Kalakonda
Hari Prasad Kalakonda
Latha Kalakonda
5002, Newcastle Ln,
San Antonio, Texas – 78249
Tel: 210 687 4988
email: smfoodmart@yahoo.com
PRO-SE APPELLEANTS

## XIII.    CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served via eFile (to the extent the same was possible) and via facsimile (to the extent service through said eFile was not possible) at the same time as the foregoing was e-filed with the Court on August 06ᵗʰ, 2015.

**Michael D. Conner**
State Bar No. 04688650
1415 Louisiana, 36th Floor
Houston, Texas 77002
Telephone: (713) 220-9162
Facsimile: (713) 223-9319
Email: mconner@hirschwest.com

**Eric S. Lipper**
State Bar No. 12399000
1415 Louisiana, 36th Floor
Houston, Texas 77002
Telephone: (713) 220-9182
Facsimile: (713) 223-9319
Email: elipper@hirschwest.com

**Frederick L. Fuhr**
T.B.A. No. 00798193
107 Landing Blvd., Ste. F
League City, Texas 77573
Telephone 281.332.1400
Facsimile 281.332.8885
Email: ffuhr@aol.com
ATTORNEYS FOR APPELLE

/s/ Hari Prasad Kalakonda
/s/ Latha Kalakonda
Hari Prasad Kalakonda
Latha Kalakonda
5002, Newcastle Ln,
San Antonio, Texas – 78249
Tel: 210 687 4988
email:smfoodmart@yahoo.com
PRO-SE APPELLEANTS

32

# XIV. <u>INDEX OF APPENDIX</u>

1. AAA The Code of Ethics for Arbitrators in Commercial Disputes.

2. ABA The Code of Ethics for Arbitrators in Commercial Disputes.



# The Code of Ethics for Arbitrators in Commercial Disputes

Effective March 1, 2004

**The Code of Ethics for Arbitrators in Commercial Disputes** was originally prepared in 1977 by a joint committee consisting of a special committee of the American Arbitration Association® and a special committee of the American Bar Association. The Code was revised in 2003 by an ABA Task Force and special committee of the AAA®.

## Preamble

The use of arbitration to resolve a wide variety of disputes has grown extensively and forms a significant part of the system of justice on which our society relies for a fair determination of legal rights. Persons who act as arbitrators therefore undertake serious responsibilities to the public, as well as to the parties. Those responsibilities include important ethical obligations.

Few cases of unethical behavior by commercial arbitrators have arisen. Nevertheless, this Code sets forth generally accepted standards of ethical conduct for the guidance of arbitrators and parties in commercial disputes, in the hope of contributing to the maintenance of high standards and continued confidence in the process of arbitration.

This Code provides ethical guidelines for many types of arbitration but does not apply to labor arbitration, which is generally conducted under the **Code of Professional Responsibility for Arbitrators of Labor-Management Disputes.**

There are many different types of commercial arbitration. Some proceedings are conducted under arbitration rules established by various organizations and trade associations, while others are conducted without such rules. Although most proceedings are arbitrated pursuant to voluntary agreement of the parties, certain types of disputes are submitted to arbitration by reason of particular laws. This Code is intended to apply to all such proceedings in which disputes or claims are submitted for decision to one or more arbitrators appointed in a manner provided by an agreement of the parties, by applicable arbitration rules, or by law. In all such cases, the persons who have the power to decide should observe fundamental standards of ethical conduct. In this Code, all such persons are called "arbitrators," although in some types of proceeding they might be called "umpires," "referees," "neutrals," or have some other title.

Arbitrators, like judges, have the power to decide cases. However, unlike full-time judges, arbitrators are usually engaged in other occupations before, during, and after the time that they serve as arbitrators. Often, arbitrators are purposely chosen from the same trade or industry as the parties in order to bring special knowledge to the task of deciding. This Code recognizes these fundamental differences between arbitrators and judges.

In those instances where this Code has been approved and recommended by organizations that provide, coordinate, or administer services of arbitrators, it provides ethical standards for the members of their respective panels of arbitrators. However, this Code does not form a part of the arbitration rules of any such organization unless its rules so provide.



## Note on Neutrality

In some types of commercial arbitration, the parties or the administering institution provide for three or more arbitrators. In some such proceedings, it is the practice for each party, acting alone, to appoint one arbitrator (a "party-appointed arbitrator") and for one additional arbitrator to be designated by the party-appointed arbitrators, or by the parties, or by an independent institution or individual. The sponsors of this Code believe that it is preferable for all arbitrators including any party-appointed arbitrators to be neutral, that is, independent and impartial, and to comply with the same ethical standards. This expectation generally is essential in arbitrations where the parties, the nature of the dispute, or the enforcement of any resulting award may have international aspects. However, parties in certain domestic arbitrations in the United States may prefer that party-appointed arbitrators be non-neutral and governed by special ethical considerations. These special ethical considerations appear in Canon X of this Code.

This Code establishes a presumption of neutrality for all arbitrators, including party-appointed arbitrators, which applies unless the parties' agreement, the arbitration rules agreed to by the parties or applicable laws provide otherwise. This Code requires all party-appointed arbitrators, whether neutral or not, to make pre-appointment disclosures of any facts which might affect their neutrality, independence, or impartiality. This Code also requires all party-appointed arbitrators to ascertain and disclose as soon as practicable whether the parties intended for them to serve as neutral or not. If any doubt or uncertainty exists, the party-appointed arbitrators should serve as neutrals unless and until such doubt or uncertainty is resolved in accordance with Canon IX. This Code expects all arbitrators, including those serving under Canon X, to preserve the integrity and fairness of the process.

## Note on Construction

Various aspects of the conduct of arbitrators, including some matters covered by this Code, may also be governed by agreements of the parties, arbitration rules to which the parties have agreed, applicable law, or other applicable ethics rules, all of which should be consulted by the arbitrators. This Code does not take the place of or supersede such laws, agreements, or arbitration rules to which the parties have agreed and should be read in conjunction with other rules of ethics. It does not establish new or additional grounds for judicial review of arbitration awards.

All provisions of this Code should therefore be read as subject to contrary provisions of applicable law and arbitration rules. They should also be read as subject to contrary agreements of the parties. Nevertheless, this Code imposes no obligation on any arbitrator to act in a manner inconsistent with the arbitrator's fundamental duty to preserve the integrity and fairness of the arbitral process.

Canons I through VIII of this Code apply to all arbitrators. Canon IX applies to all party-appointed arbitrators, except that certain party-appointed arbitrators are exempted by Canon X from compliance with certain provisions of Canons I-IX related to impartiality and independence, as specified in Canon X.


## CANON I: An arbitrator should uphold the integrity and fairness of the arbitration process.

**A.** An arbitrator has a responsibility not only to the parties but also to the process of arbitration itself, and must observe high standards of conduct so that the integrity and fairness of the process will be preserved. Accordingly, an arbitrator should recognize a responsibility to the public, to the parties whose rights will be decided, and to all other participants in the proceeding. This responsibility may include pro bono service as an arbitrator where appropriate.

**B.** One should accept appointment as an arbitrator only if fully satisfied:

**(1)** that he or she can serve impartially;

**(2)** that he or she can serve independently from the parties, potential witnesses, and the other arbitrators;

**(3)** that he or she is competent to serve; and

**(4)** that he or she can be available to commence the arbitration in accordance with the requirements of the proceeding and thereafter to devote the time and attention to its completion that the parties are reasonably entitled to expect.

**C.** After accepting appointment and while serving as an arbitrator, a person should avoid entering into any business, professional, or personal relationship, or acquiring any financial or personal interest, which is likely to affect impartiality or which might reasonably create the appearance of partiality. For a reasonable period of time after the decision of a case, persons who have served as arbitrators should avoid entering into any such relationship, or acquiring any such interest, in circumstances which might reasonably create the appearance that they had been influenced in the arbitration by the anticipation or expectation of the relationship or interest. Existence of any of the matters or circumstances described in this paragraph C does not render it unethical for one to serve as an arbitrator where the parties have consented to the arbitrator's appointment or continued services following full disclosure of the relevant facts in accordance with Canon II.

**D.** Arbitrators should conduct themselves in a way that is fair to all parties and should not be swayed by outside pressure, public clamor, and fear of criticism or self-interest. They should avoid conduct and statements that give the appearance of partiality toward or against any party.

**E.** When an arbitrator's authority is derived from the agreement of the parties, an arbitrator should neither exceed that authority nor do less than is required to exercise that authority completely. Where the agreement of the parties sets forth procedures to be followed in conducting the arbitration or refers to rules to be followed, it is the obligation of the arbitrator to comply with such procedures or rules. An arbitrator has no ethical obligation to comply with any agreement, procedures or rules that are unlawful or that, in the arbitrator's judgment, would be inconsistent with this Code.

**F.** An arbitrator should conduct the arbitration process so as to advance the fair and efficient resolution of the matters submitted for decision. An arbitrator should make all reasonable efforts to prevent delaying tactics, harassment of parties or other participants, or other abuse or disruption of the arbitration process.

**G.** The ethical obligations of an arbitrator begin upon acceptance of the appointment and continue throughout all stages of the proceeding. In addition, as set forth in this Code, certain ethical obligations begin as soon as a person is requested to serve as an arbitrator and certain ethical obligations continue after the decision in the proceeding has been given to the parties.

**H.** Once an arbitrator has accepted an appointment, the arbitrator should not withdraw or abandon the appointment unless compelled to do so by unanticipated circumstances that would render it impossible or impracticable to continue. When an arbitrator is to be compensated for his or her services, the arbitrator may withdraw if the parties fail or refuse to provide for payment of the compensation as agreed.

**I.** An arbitrator who withdraws prior to the completion of the arbitration, whether upon the arbitrator's initiative or upon the request of one or more of the parties, should take reasonable steps to protect the interests of the parties in the arbitration, including return of evidentiary materials and protection of confidentiality.


*Comment to Canon I*

A prospective arbitrator is not necessarily partial or prejudiced by having acquired knowledge of the parties, the applicable law or the customs and practices of the business involved. Arbitrators may also have special experience or expertise in the areas of business, commerce, or technology which are involved in the arbitration. Arbitrators do not contravene this Canon if, by virtue of such experience or expertise, they have views on certain general issues likely to arise in the arbitration, but an arbitrator may not have prejudged any of the specific factual or legal determinations to be addressed during the arbitration.

During an arbitration, the arbitrator may engage in discourse with the parties or their counsel, draw out arguments or contentions, comment on the law or evidence, make interim rulings, and otherwise control or direct the arbitration. These activities are integral parts of an arbitration. Paragraph D of Canon I is not intended to preclude or limit either full discussion of the issues during the course of the arbitration or the arbitrator's management of the proceeding.

**CANON II:** An arbitrator should disclose any interest or relationship likely to affect impartiality or which might create an appearance of partiality.

**A.** Persons who are requested to serve as arbitrators should, before accepting, disclose:

    **(1)** any known direct or indirect financial or personal interest in the outcome of the arbitration;

    **(2)** any known existing or past financial, business, professional or personal relationships which might reasonably affect impartiality or lack of independence in the eyes of any of the parties. For example, prospective arbitrators should disclose any such relationships which they personally have with any party or its lawyer, with any co-arbitrator, or with any individual whom they have been told will be a witness. They should also disclose any such relationships involving their families or household members or their current employers, partners, or professional or business associates that can be ascertained by reasonable efforts;

    **(3)** the nature and extent of any prior knowledge they may have of the dispute; and

    **(4)** any other matters, relationships, or interests which they are obligated to disclose by the agreement of the parties, the rules or practices of an institution, or applicable law regulating arbitrator disclosure.

**B.** Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in paragraph A.

**C.** The obligation to disclose interests or relationships described in paragraph A is a continuing duty which requires a person who accepts appointment as an arbitrator to disclose, as soon as practicable, at any stage of the arbitration, any such interests or relationships which may arise, or which are recalled or discovered.

**D.** Any doubt as to whether or not disclosure is to be made should be resolved in favor of disclosure.

**E.** Disclosure should be made to all parties unless other procedures for disclosure are provided in the agreement of the parties, applicable rules or practices of an institution, or by law. Where more than one arbitrator has been appointed, each should inform the others of all matters disclosed.

**F.** When parties, with knowledge of a person's interests and relationships, nevertheless desire that person to serve as an arbitrator, that person may properly serve.

**G.** If an arbitrator is requested by all parties to withdraw, the arbitrator must do so. If an arbitrator is requested to withdraw by less than all of the parties because of alleged partiality, the arbitrator should withdraw unless either of the following circumstances exists:

**(1)** An agreement of the parties, or arbitration rules agreed to by the parties, or applicable law establishes procedures for determining challenges to arbitrators, in which case those procedures should be followed; or

**(2)** In the absence of applicable procedures, if the arbitrator, after carefully considering the matter, determines that the reason for the challenge is not substantial, and that he or she can nevertheless act and decide the case impartially and fairly.

**H.** If compliance by a prospective arbitrator with any provision of this Code would require disclosure of confidential or privileged information, the prospective arbitrator should either:

**(1)** Secure the consent to the disclosure from the person who furnished the information or the holder of the privilege; or

**(2)** Withdraw.

## CANON III: An arbitrator should avoid impropriety or the appearance of impropriety in communicating with parties.

**A.** If an agreement of the parties or applicable arbitration rules establishes the manner or content of communications between the arbitrator and the parties, the arbitrator should follow those procedures notwithstanding any contrary provision of paragraphs B and C.

**B.** An arbitrator or prospective arbitrator should not discuss a proceeding with any party in the absence of any other party, except in any of the following circumstances:

**(1)** When the appointment of a prospective arbitrator is being considered, the prospective arbitrator:

**(a)** may ask about the identities of the parties, counsel, or witnesses and the general nature of the case; and

**(b)** may respond to inquiries from a party or its counsel designed to determine his or her suitability and availability for the appointment. In any such dialogue, the prospective arbitrator may receive information from a party or its counsel disclosing the general nature of the dispute but should not permit them to discuss the merits of the case.

**(2)** In an arbitration in which the two party-appointed arbitrators are expected to appoint the third arbitrator, each party-appointed arbitrator may consult with the party who appointed the arbitrator concerning the choice of the third arbitrator;

**(3)** In an arbitration involving party-appointed arbitrators, each party-appointed arbitrator may consult with the party who appointed the arbitrator concerning arrangements for any compensation to be paid to the party-appointed arbitrator. Submission of routine written requests for payment of compensation and expenses in accordance with such arrangements and written communications pertaining solely to such requests need not be sent to the other party;

**(4)** In an arbitration involving party-appointed arbitrators, each party-appointed arbitrator may consult with the party who appointed the arbitrator concerning the status of the arbitrator (i.e., neutral or non-neutral), as contemplated by paragraph C of Canon IX;

**(5)** Discussions may be had with a party concerning such logistical matters as setting the time and place of hearings or making other arrangements for the conduct of the proceedings. However, the arbitrator should promptly inform each other party of the discussion and should not make any final determination concerning the matter discussed before giving each absent party an opportunity to express the party's views; or

**(6)** If a party fails to be present at a hearing after having been given due notice, or if all parties expressly consent, the arbitrator may discuss the case with any party who is present.

**C.** Unless otherwise provided in this Canon, in applicable arbitration rules or in an agreement of the parties, whenever an arbitrator communicates in writing with one party, the arbitrator should at the same time send a copy of the communication to every other party, and whenever the arbitrator receives any written communication concerning the case from one party which has not already been sent to every other party, the arbitrator should send or cause it to be sent to the other parties.



## CANON IV: An arbitrator should conduct the proceedings fairly and diligently.

**A.** An arbitrator should conduct the proceedings in an even-handed manner. The arbitrator should be patient and courteous to the parties, their representatives, and the witnesses and should encourage similar conduct by all participants.

**B.** The arbitrator should afford to all parties the right to be heard and due notice of the time and place of any hearing. The arbitrator should allow each party a fair opportunity to present its evidence and arguments.

**C.** The arbitrator should not deny any party the opportunity to be represented by counsel or by any other person chosen by the party.

**D.** If a party fails to appear after due notice, the arbitrator should proceed with the arbitration when authorized to do so, but only after receiving assurance that appropriate notice has been given to the absent party.

**E.** When the arbitrator determines that more information than has been presented by the parties is required to decide the case, it is not improper for the arbitrator to ask questions, call witnesses, and request documents or other evidence, including expert testimony.

**F.** Although it is not improper for an arbitrator to suggest to the parties that they discuss the possibility of settlement or the use of mediation, or other dispute resolution processes, an arbitrator should not exert pressure on any party to settle or to utilize other dispute resolution processes. An arbitrator should not be present or otherwise participate in settlement discussions or act as a mediator unless requested to do so by all parties.

**G.** Co-arbitrators should afford each other full opportunity to participate in all aspects of the proceedings.

*Comment to Paragraph G*

Paragraph G of Canon IV is not intended to preclude one arbitrator from acting in limited circumstances (e.g., ruling on discovery issues) where authorized by the agreement of the parties, applicable rules or law, nor does it preclude a majority of the arbitrators from proceeding with any aspect of the arbitration if an arbitrator is unable or unwilling to participate and such action is authorized by the agreement of the parties or applicable rules or law. It also does not preclude *ex parte* requests for interim relief.

## CANON V: An arbitrator should make decisions in a just, independent and deliberate manner.

**A.** The arbitrator should, after careful deliberation, decide all issues submitted for determination. An arbitrator should decide no other issues.

**B.** An arbitrator should decide all matters justly, exercising independent judgment, and should not permit outside pressure to affect the decision.

**C.** An arbitrator should not delegate the duty to decide to any other person.

**D.** In the event that all parties agree upon a settlement of issues in dispute and request the arbitrator to embody that agreement in an award, the arbitrator may do so, but is not required to do so unless satisfied with the propriety of the terms of settlement. Whenever an arbitrator embodies a settlement by the parties in an award, the arbitrator should state in the award that it is based on an agreement of the parties.



## CANON VI: An arbitrator should be faithful to the relationship of trust and confidentiality inherent in that office.

**A.** An arbitrator is in a relationship of trust to the parties and should not, at any time, use confidential information acquired during the arbitration proceeding to gain personal advantage or advantage for others, or to affect adversely the interest of another.

**B.** The arbitrator should keep confidential all matters relating to the arbitration proceedings and decision. An arbitrator may obtain help from an associate, a research assistant or other persons in connection with reaching his or her decision if the arbitrator informs the parties of the use of such assistance and such persons agree to be bound by the provisions of this Canon.

**C.** It is not proper at any time for an arbitrator to inform anyone of any decision in advance of the time it is given to all parties. In a proceeding in which there is more than one arbitrator, it is not proper at any time for an arbitrator to inform anyone about the substance of the deliberations of the arbitrators. After an arbitration award has been made, it is not proper for an arbitrator to assist in proceedings to enforce or challenge the award.

**D.** Unless the parties so request, an arbitrator should not appoint himself or herself to a separate office related to the subject matter of the dispute, such as receiver or trustee, nor should a panel of arbitrators appoint one of their number to such an office.

## CANON VII: An arbitrator should adhere to standards of integrity and fairness when making arrangements for compensation and reimbursement of expenses.

**A.** Arbitrators who are to be compensated for their services or reimbursed for their expenses shall adhere to standards of integrity and fairness in making arrangements for such payments.

**B.** Certain practices relating to payments are generally recognized as tending to preserve the integrity and fairness of the arbitration process. These practices include:

**(1)** Before the arbitrator finally accepts appointment, the basis of payment, including any cancellation fee, compensation in the event of withdrawal and compensation for study and preparation time, and all other charges, should be established. Except for arrangements for the compensation of party-appointed arbitrators, all parties should be informed in writing of the terms established;

**(2)** In proceedings conducted under the rules or administration of an institution that is available to assist in making arrangements for payments, communication related to compensation should be made through the institution. In proceedings where no institution has been engaged by the parties to administer the arbitration, any communication with arbitrators (other than party appointed arbitrators) concerning payments should be in the presence of all parties; and

**(3)** Arbitrators should not, absent extraordinary circumstances, request increases in the basis of their compensation during the course of a proceeding.

## CANON VIII: An arbitrator may engage in advertising or promotion of arbitral services which is truthful and accurate.

**A.** Advertising or promotion of an individual's willingness or availability to serve as an arbitrator must be accurate and unlikely to mislead. Any statements about the quality of the arbitrator's work or the success of the arbitrator's practice must be truthful.

**B.** Advertising and promotion must not imply any willingness to accept an appointment otherwise than in accordance with this Code.



*Comment to Canon VIII*

This Canon does not preclude an arbitrator from printing, publishing, or disseminating advertisements conforming to these standards in any electronic or print medium, from making personal presentations to prospective users of arbitral services conforming to such standards or from responding to inquiries concerning the arbitrator's availability, qualifications, experience, or fee arrangements.

CANON IX:   Arbitrators appointed by one party have a duty to determine and disclose their status and to comply with this code, except as exempted by Canon X.

**A.**  In some types of arbitration in which there are three arbitrators, it is customary for each party, acting alone, to appoint one arbitrator. The third arbitrator is then appointed by agreement either of the parties or of the two arbitrators, or failing such agreement, by an independent institution or individual. In tripartite arbitrations to which this Code applies, all three arbitrators are presumed to be neutral and are expected to observe the same standards as the third arbitrator.

**B.**  Notwithstanding this presumption, there are certain types of tripartite arbitration in which it is expected by all parties that the two arbitrators appointed by the parties may be predisposed toward the party appointing them. Those arbitrators, referred to in this Code as "Canon X arbitrators," are not to be held to the standards of neutrality and independence applicable to other arbitrators. Canon X describes the special ethical obligations of party-appointed arbitrators who are not expected to meet the standard of neutrality.

**C.**  A party-appointed arbitrator has an obligation to ascertain, as early as possible but not later than the first meeting of the arbitrators and parties, whether the parties have agreed that the party-appointed arbitrators will serve as neutrals or whether they shall be subject to Canon X, and to provide a timely report of their conclusions to the parties and other arbitrators:

**(1)**  Party-appointed arbitrators should review the agreement of the parties, the applicable rules and any applicable law bearing upon arbitrator neutrality. In reviewing the agreement of the parties, party-appointed arbitrators should consult any relevant express terms of the written or oral arbitration agreement. It may also be appropriate for them to inquire into agreements that have not been expressly set forth, but which may be implied from an established course of dealings of the parties or well-recognized custom and usage in their trade or profession;

**(2)**  Where party-appointed arbitrators conclude that the parties intended for the party-appointed arbitrators not to serve as neutrals, they should so inform the parties and the other arbitrators. The arbitrators may then act as provided in Canon X unless or until a different determination of their status is made by the parties, any administering institution or the arbitral panel; and

**(3)**  Until party-appointed arbitrators conclude that the party-appointed arbitrators were not intended by the parties to serve as neutrals, or if the party-appointed arbitrators are unable to form a reasonable belief of their status from the foregoing sources and no decision in this regard has yet been made by the parties, any administering institution, or the arbitral panel, they should observe all of the obligations of neutral arbitrators set forth in this Code.

**D.**  Party-appointed arbitrators not governed by Canon X shall observe all of the obligations of Canons I through VIII unless otherwise required by agreement of the parties, any applicable rules, or applicable law.


## CANON X: Exemptions for arbitrators appointed by one party who are not subject to rules of neutrality.

Canon X arbitrators are expected to observe all of the ethical obligations prescribed by this Code except those from which they are specifically excused by Canon X.

**A.** *Obligations Under Canon I*

Canon X arbitrators should observe all of the obligations of Canon I subject only to the following provisions:

**(1)** Canon X arbitrators may be predisposed toward the party who appointed them but in all other respects are obligated to act in good faith and with integrity and fairness. For example, Canon X arbitrators should not engage in delaying tactics or harassment of any party or witness and should not knowingly make untrue or misleading statements to the other arbitrators; and

**(2)** The provisions of subparagraphs B(1), B(2), and paragraphs C and D of Canon I, insofar as they relate to partiality, relationships, and interests are not applicable to Canon X arbitrators.

**B.** *Obligations Under Canon II*

**(1)** Canon X arbitrators should disclose to all parties, and to the other arbitrators, all interests and relationships which Canon II requires be disclosed. Disclosure as required by Canon II is for the benefit not only of the party who appointed the arbitrator, but also for the benefit of the other parties and arbitrators so that they may know of any partiality which may exist or appear to exist; and

**(2)** Canon X arbitrators are not obliged to withdraw under paragraph G of Canon II if requested to do so only by the party who did not appoint them.

**C.** *Obligations Under Canon III*

Canon X arbitrators should observe all of the obligations of Canon III subject only to the following provisions:

**(1)** Like neutral party-appointed arbitrators, Canon X arbitrators may consult with the party who appointed them to the extent permitted in paragraph B of Canon III;

**(2)** Canon X arbitrators shall, at the earliest practicable time, disclose to the other arbitrators and to the parties whether or not they intend to communicate with their appointing parties. If they have disclosed the intention to engage in such communications, they may thereafter communicate with their appointing parties concerning any other aspect of the case, except as provided in paragraph (3);

**(3)** If such communication occurred prior to the time they were appointed as arbitrators, or prior to the first hearing or other meeting of the parties with the arbitrators, the Canon X arbitrator should, at or before the first hearing or meeting of the arbitrators with the parties, disclose the fact that such communication has taken place. In complying with the provisions of this subparagraph, it is sufficient that there be disclosure of the fact that such communication has occurred without disclosing the content of the communication. A single timely disclosure of the Canon X arbitrator's intention to participate in such communications in the future is sufficient;

**(4)** Canon X arbitrators may not at any time during the arbitration:

**(a)** disclose any deliberations by the arbitrators on any matter or issue submitted to them for decision;

**(b)** communicate with the parties that appointed them concerning any matter or issue taken under consideration by the panel after the record is closed or such matter or issue has been submitted for decision; or

**(c)** disclose any final decision or interim decision in advance of the time that it is disclosed to all parties.

**(5)** Unless otherwise agreed by the arbitrators and the parties, a Canon X arbitrator may not communicate orally with the neutral arbitrator concerning any matter or issue arising or expected to arise in the arbitration in the absence of the other Canon X arbitrator. If a Canon X arbitrator communicates in writing with the neutral arbitrator, he or she shall simultaneously provide a copy of the written communication to the other Canon X arbitrator;

**(6)** When Canon X arbitrators communicate orally with the parties that appointed them concerning any matter on which communication is permitted under this Code, they are not obligated to disclose the contents of such oral communications to any other party or arbitrator; and

**(7)** When Canon X arbitrators communicate in writing with the party who appointed them concerning any matter on which communication is permitted under this Code, they are not required to send copies of any such written communication to any other party or arbitrator.

**D.** *Obligations Under Canon IV*

Canon X arbitrators should observe all of the obligations of Canon IV.

**E.** *Obligations Under Canon V*

Canon X arbitrators should observe all of the obligations of Canon V, except that they may be predisposed toward deciding in favor of the party who appointed them.

**F.** *Obligations Under Canon VI*

Canon X arbitrators should observe all of the obligations of Canon VI.

**G.** *Obligations Under Canon VII*

Canon X arbitrators should observe all of the obligations of Canon VII.

**H.** *Obligations Under Canon VIII*

Canon X arbitrators should observe all of the obligations of Canon VIII.

**I.** *Obligations Under Canon IX*

The provisions of paragraph D of Canon IX are inapplicable to Canon X arbitrators, except insofar as the obligations are also set forth in this Canon.

# The Code of Ethics for Arbitrators in Commercial Disputes

***Approved by the American Bar Association House of Delegates on February 9, 2004***
***Approved by the Executive Committee of the Board of Directors of the AAA***

The Code of Ethics for Arbitrators in Commercial Disputes was originally prepared in 1977 by a joint committee consisting of a special committee of the American Arbitration Association and a special committee of the American Bar Association. The Code was revised in 2003 by an ABA Task Force and special committee of the AAA. Both the original 1977 Code and the 2003Revision have been approved and recommended by both organizations.

*Preamble*

The use of arbitration to resolve a wide variety of disputes has grown extensively and forms a significant part of the system of justice on which our society relies for a fair determination of legal rights. Persons who act as arbitrators therefore undertake serious responsibilities to the public, as well as to the parties. Those responsibilities include important ethical obligations.

Few cases of unethical behavior by commercial arbitrators have arisen. Nevertheless, this Code sets forth generally accepted standards of ethical conduct for the guidance of arbitrators and parties in commercial disputes, in the hope of contributing to the maintenance of high standards and continued confidence in the process of arbitration.

This Code provides ethical guidelines for many types of arbitration but does not apply to labor arbitration, which is generally conducted under the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes.

There are many different types of commercial arbitration. Some proceedings are conducted under arbitration rules established by various organizations and trade associations, while others are conducted without such rules. Although most proceedings are arbitrated pursuant to voluntary agreement of the parties, certain types of disputes are submitted to arbitration by reason of particular laws. This Code is intended to apply to all such proceedings in which disputes or claims are submitted for decision to one or more arbitrators appointed in a manner provided by an agreement of the parties, by applicable arbitration rules, or by law. In all such cases, the persons who have the power to decide should observe fundamental standards of ethical conduct. In this Code, all such persons are called "arbitrators," although in some types of proceeding they might be called "umpires," "referees," "neutrals," or have some other title.

Arbitrators, like judges, have the power to decide cases. However, unlike full-time judges, arbitrators are usually engaged in other occupations before, during, and after the

time that they serve as arbitrators. Often, arbitrators are purposely chosen from the same trade or industry as the parties in order to bring special knowledge to the task of deciding. This Code recognizes these fundamental differences between arbitrators and judges.

In those instances where this Code has been approved and recommended by organizations that provide, coordinate, or administer services of arbitrators, it provides ethical standards for the members of their respective panels of arbitrators. However, this Code does not form a part of the arbitration rules of any such organization unless its rules so provide.

*Note on Neutrality*

In some types of commercial arbitration, the parties or the administering institution provide for three or more arbitrators. In some such proceedings, it is the practice for each party, acting alone, to appoint one arbitrator (a "party-appointed arbitrator") and for one additional arbitrator to be designated by the party-appointed arbitrators, or by the parties, or by an independent institution or individual. The sponsors of this Code believe that it is preferable for all arbitrators – including any party-appointed arbitrators – to be neutral, that is, independent and impartial, and to comply with the same ethical standards. This expectation generally is essential in arbitrations where the parties, the nature of the dispute, or the enforcement of any resulting award may have international aspects. However, parties in certain domestic arbitrations in the United States may prefer that party-appointed arbitrators be non-neutral and governed by special ethical considerations. These special ethical considerations appear in Canon X of this Code.

This Code establishes a presumption of neutrality for all arbitrators, including party-appointed arbitrators, which applies unless the parties' agreement, the arbitration rules agreed to by the parties or applicable laws provide otherwise. This Code requires all party-appointed arbitrators, whether neutral or not, to make pre-appointment disclosures of any facts which might affect their neutrality, independence, or impartiality. This Code also requires all party-appointed arbitrators to ascertain and disclose as soon as practicable whether the parties intended for them to serve as neutral or not. If any doubt or uncertainty exists, the party-appointed arbitrators should serve as neutrals unless and until such doubt or uncertainty is resolved in accordance with Canon IX. This Code expects all arbitrators, including those serving under Canon X, to preserve the integrity and fairness of the process.

*Note on Construction*

Various aspects of the conduct of arbitrators, including some matters covered by this Code, may also be governed by agreements of the parties, arbitration rules to which the parties have agreed, applicable law, or other applicable ethics rules, all of which should be consulted by the arbitrators. This Code does not take the place of or supersede such laws, agreements, or arbitration rules to which the parties have agreed and should be read in conjunction with other rules of ethics. It does not establish new or additional grounds for judicial review of arbitration awards.

All provisions of this Code should therefore be read as subject to contrary provisions of applicable law and arbitration rules. They should also be read as subject to contrary agreements of the parties. Nevertheless, this Code imposes no obligation on any arbitrator to act in a manner inconsistent with the arbitrator's fundamental duty to preserve the integrity and fairness of the arbitral process.

Canons I through VIII of this Code apply to all arbitrators. Canon IX applies to all party-appointed arbitrators, except that certain party-appointed arbitrators are exempted by Canon X from compliance with certain provisions of Canons I-IX related to impartiality and independence, as specified in Canon X.

CANON I.     AN ARBITRATOR SHOULD UPHOLD THE INTEGRITY
             AND FAIRNESS OF THE ARBITRATION PROCESS.

A.     An arbitrator has a responsibility not only to the parties but also to the process of arbitration itself, and must observe high standards of conduct so that the integrity and fairness of the process will be preserved. Accordingly, an arbitrator should recognize a responsibility to the public, to the parties whose rights will be decided, and to all other participants in the proceeding. This responsibility may include pro bono service as an arbitrator where appropriate.

B.     One should accept appointment as an arbitrator only if fully satisfied:

       (1) that he or she can serve impartially;
       (2) that he or she can serve independently from the parties, potential witnesses, and the other arbitrators;
       (3) that he or she is competent to serve; and
       (4) that he or she can be available to commence the arbitration in accordance with the requirements of the proceeding and thereafter to devote the time and attention to its completion that the parties are reasonably entitled to expect.

C.     After accepting appointment and while serving as an arbitrator, a person should avoid entering into any business, professional, or personal relationship, or acquiring any financial or personal interest, which is likely to affect impartiality or which might reasonably create the appearance of partiality. For a reasonable period of time after the decision of a case, persons who have served as arbitrators should avoid entering into any such relationship, or acquiring any such interest, in circumstances which might reasonably create the appearance that they had been influenced in the arbitration by the anticipation or expectation of the relationship or interest. Existence of any of the matters or circumstances described in this paragraph C does not render it unethical for one to serve as an arbitrator where the parties have consented to the arbitrator's appointment or continued services following full disclosure of the relevant facts in accordance with Canon II.

D.     Arbitrators should conduct themselves in a way that is fair to all parties and should not be swayed by outside pressure, public clamor, and fear of criticism or self-interest. They should avoid conduct and statements that give the appearance of partiality toward or against any party.

E.     When an arbitrator's authority is derived from the agreement of the parties, an arbitrator should neither exceed that authority nor do less than is required to exercise that authority completely. Where the agreement of the parties sets forth procedures to be followed in conducting the arbitration or refers to rules to be followed, it is the obligation of the arbitrator to comply with such procedures or rules. An arbitrator has no ethical obligation to comply with any agreement, procedures or rules that are unlawful or that, in the arbitrator's judgment, would be inconsistent with this Code.

F.     An arbitrator should conduct the arbitration process so as to advance the fair and efficient resolution of the matters submitted for decision. An arbitrator should make all reasonable efforts to prevent delaying tactics, harassment of parties or other participants, or other abuse or disruption of the arbitration process.

G.     The ethical obligations of an arbitrator begin upon acceptance of the appointment and continue throughout all stages of the proceeding. In addition, as set forth in this Code, certain ethical obligations begin as soon as a person is requested to serve as an arbitrator and certain ethical obligations continue after the decision in the proceeding has been given to the parties.

H.     Once an arbitrator has accepted an appointment, the arbitrator should not withdraw or abandon the appointment unless compelled to do so by unanticipated circumstances that would render it impossible or impracticable to continue. When an arbitrator is to be compensated for his or her services, the arbitrator may withdraw if the parties fail or refuse to provide for payment of the compensation as agreed.

I.     An arbitrator who withdraws prior to the completion of the arbitration, whether upon the arbitrator's initiative or upon the request of one or more of the parties, should take reasonable steps to protect the interests of the parties in the arbitration, including return of evidentiary materials and protection of confidentiality.

*Comment to Canon I*

A prospective arbitrator is not necessarily partial or prejudiced by having acquired knowledge of the parties, the applicable law or the customs and practices of the business involved. Arbitrators may also have special experience or expertise in the areas of business, commerce, or technology which are involved in the arbitration. Arbitrators do not contravene this Canon if, by virtue of such experience or expertise, they have views on certain general issues likely to arise in the arbitration, but an arbitrator may not have

4

prejudged any of the specific factual or legal determinations to be addressed during the arbitration.

During an arbitration, the arbitrator may engage in discourse with the parties or their counsel, draw out arguments or contentions, comment on the law or evidence, make interim rulings, and otherwise control or direct the arbitration. These activities are integral parts of an arbitration. Paragraph D of Canon I is not intended to preclude or limit either full discussion of the issues during the course of the arbitration or the arbitrator's management of the proceeding.

CANON II.   AN ARBITRATOR SHOULD DISCLOSE ANY INTEREST OR RELATIONSHIP LIKELY TO AFFECT IMPARTIALITY OR WHICH MIGHT CREATE AN APPEARANCE OF PARTIALITY.

A.   Persons who are requested to serve as arbitrators should, before accepting, disclose:

(1) Any known direct or indirect financial or personal interest in the outcome of the arbitration;
(2) Any known existing or past financial, business, professional or personal relationships which might reasonably affect impartiality or lack of independence in the eyes of any of the parties. For example, prospective arbitrators should disclose any such relationships which they personally have with any party or its lawyer, with any co-arbitrator, or with any individual whom they have been told will be a witness. They should also disclose any such relationships involving their families or household members or their current employers, partners, or professional or business associates that can be ascertained by reasonable efforts;
(3) The nature and extent of any prior knowledge they may have of the dispute; and
(4) Any other matters, relationships, or interests which they are obligated to disclose by the agreement of the parties, the rules or practices of an institution, or applicable law regulating arbitrator disclosure.

B.   Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in paragraph A.

C.   The obligation to disclose interests or relationships described in paragraph A is a continuing duty which requires a person who accepts appointment as an arbitrator to disclose, as soon as practicable, at any stage of the arbitration, any such interests or relationships which may arise, or which are recalled or discovered.

D.   Any doubt as to whether or not disclosure is to be made should be resolved in favor of disclosure.

E. Disclosure should be made to all parties unless other procedures for disclosure are provided in the agreement of the parties, applicable rules or practices of an institution, or by law. Where more than one arbitrator has been appointed, each should inform the others of all matters disclosed.

F. When parties, with knowledge of a person's interests and relationships, nevertheless desire that person to serve as an arbitrator, that person may properly serve.

G. If an arbitrator is requested by all parties to withdraw, the arbitrator must do so. If an arbitrator is requested to withdraw by less than all of the parties because of alleged partiality, the arbitrator should withdraw unless either of the following circumstances exists:

(1) An agreement of the parties, or arbitration rules agreed to by the parties, or applicable law establishes procedures for determining challenges to arbitrators, in which case those procedures should be followed; or

(2) In the absence of applicable procedures, if the arbitrator, after carefully considering the matter, determines that the reason for the challenge is not substantial, and that he or she can nevertheless act and decide the case impartially and fairly.

H. If compliance by a prospective arbitrator with any provision of this Code would require disclosure of confidential or privileged information, the prospective arbitrator should either:

(1) Secure the consent to the disclosure from the person who furnished the information or the holder of the privilege; or

(2) Withdraw.

CANON III.    AN ARBITRATOR SHOULD AVOID IMPROPRIETY OR THE APPEARANCE OF IMPROPRIETY IN COMMUNICATING WITH PARTIES.

A. If an agreement of the parties or applicable arbitration rules establishes the manner or content of communications between the arbitrator and the parties, the arbitrator should follow those procedures notwithstanding any contrary provision of paragraphs B and C.

B. An arbitrator or prospective arbitrator should not discuss a proceeding with any party in the absence of any other party, except in any of the following circumstances:

(1) When the appointment of a prospective arbitrator is being considered, the prospective arbitrator:

6

(a) may ask about the identities of the parties, counsel, or witnesses and the general nature of the case; and

(b) may respond to inquiries from a party or its counsel designed to determine his or her suitability and availability for the appointment. In any such dialogue, the prospective arbitrator may receive information from a party or its counsel disclosing the general nature of the dispute but should not permit them to discuss the merits of the case.

(2) In an arbitration in which the two party-appointed arbitrators are expected to appoint the third arbitrator, each party-appointed arbitrator may consult with the party who appointed the arbitrator concerning the choice of the third arbitrator;

(3) In an arbitration involving party-appointed arbitrators, each party-appointed arbitrator may consult with the party who appointed the arbitrator concerning arrangements for any compensation to be paid to the party-appointed arbitrator. Submission of routine written requests for payment of compensation and expenses in accordance with such arrangements and written communications pertaining solely to such requests need not be sent to the other party;

(4) In an arbitration involving party-appointed arbitrators, each party-appointed arbitrator may consult with the party who appointed the arbitrator concerning the status of the arbitrator (i.e., neutral or non-neutral), as contemplated by paragraph C of Canon IX;

(5) Discussions may be had with a party concerning such logistical matters as setting the time and place of hearings or making other arrangements for the conduct of the proceedings. However, the arbitrator should promptly inform each other party of the discussion and should not make any final determination concerning the matter discussed before giving each absent party an opportunity to express the party's views; or

(6) If a party fails to be present at a hearing after having been given due notice, or if all parties expressly consent, the arbitrator may discuss the case with any party who is present.

C. Unless otherwise provided in this Canon, in applicable arbitration rules or in an agreement of the parties, whenever an arbitrator communicates in writing with one party, the arbitrator should at the same time send a copy of the communication to every other party, and whenever the arbitrator receives any written communication concerning the case from one party which has not already been sent to every other party, the arbitrator should send or cause it to be sent to the other parties.

CANON IV.   AN ARBITRATOR SHOULD CONDUCT THE PROCEEDINGS FAIRLY AND DILIGENTLY.

A. An arbitrator should conduct the proceedings in an even-handed manner. The arbitrator should be patient and courteous to the parties, their representatives, and the witnesses and should encourage similar conduct by all participants.

B.      The arbitrator should afford to all parties the right to be heard and due notice of the time and place of any hearing. The arbitrator should allow each party a fair opportunity to present its evidence and arguments.

C.      The arbitrator should not deny any party the opportunity to be represented by counsel or by any other person chosen by the party.

D.      If a party fails to appear after due notice, the arbitrator should proceed with the arbitration when authorized to do so, but only after receiving assurance that appropriate notice has been given to the absent party.

E.      When the arbitrator determines that more information than has been presented by the parties is required to decide the case, it is not improper for the arbitrator to ask questions, call witnesses, and request documents or other evidence, including expert testimony.

F.      Although it is not improper for an arbitrator to suggest to the parties that they discuss the possibility of settlement or the use of mediation, or other dispute resolution processes, an arbitrator should not exert pressure on any party to settle or to utilize other dispute resolution processes. An arbitrator should not be present or otherwise participate in settlement discussions or act as a mediator unless requested to do so by all parties.

G.      Co-arbitrators should afford each other full opportunity to participate in all aspects of the proceedings.

*Comment to paragraph G*

Paragraph G of Canon IV is not intended to preclude one arbitrator from acting in limited circumstances (e.g., ruling on discovery issues) where authorized by the agreement of the parties, applicable rules or law, nor does it preclude a majority of the arbitrators from proceeding with any aspect of the arbitration if an arbitrator is unable or unwilling to participate and such action is authorized by the agreement of the parties or applicable rules or law.  It also does not preclude ex parte requests for interim relief.

CANON V.    AN ARBITRATOR SHOULD MAKE DECISIONS IN A JUST, INDEPENDENT AND DELIBERATE MANNER.

A.      The arbitrator should, after careful deliberation, decide all issues submitted for determination. An arbitrator should decide no other issues.

B.      An arbitrator should decide all matters justly, exercising independent judgment, and should not permit outside pressure to affect the decision.

C.      An arbitrator should not delegate the duty to decide to any other person.

D.   In the event that all parties agree upon a settlement of issues in dispute and request the arbitrator to embody that agreement in an award, the arbitrator may do so, but is not required to do so unless satisfied with the propriety of the terms of settlement. Whenever an arbitrator embodies a settlement by the parties in an award, the arbitrator should state in the award that it is based on an agreement of the parties.

CANON VI.   AN ARBITRATOR SHOULD BE FAITHFUL TO THE RELATIONSHIP OF TRUST AND CONFIDENTIALITY INHERENT IN THAT OFFICE.

A.   An arbitrator is in a relationship of trust to the parties and should not, at any time, use confidential information acquired during the arbitration proceeding to gain personal advantage or advantage for others, or to affect adversely the interest of another.

B.   The arbitrator should keep confidential all matters relating to the arbitration proceedings and decision. An arbitrator may obtain help from an associate, a research assistant or other persons in connection with reaching his or her decision if the arbitrator informs the parties of the use of such assistance and such persons agree to be bound by the provisions of this Canon.

C.   It is not proper at any time for an arbitrator to inform anyone of any decision in advance of the time it is given to all parties. In a proceeding in which there is more than one arbitrator, it is not proper at any time for an arbitrator to inform anyone about the substance of the deliberations of the arbitrators. After an arbitration award has been made, it is not proper for an arbitrator to assist in proceedings to enforce or challenge the award.

D.   Unless the parties so request, an arbitrator should not appoint himself or herself to a separate office related to the subject matter of the dispute, such as receiver or trustee, nor should a panel of arbitrators appoint one of their number to such an office.

CANON VII.   AN ARBITRATOR SHOULD ADHERE TO STANDARDS OF INTEGRITY AND FAIRNESS WHEN MAKING ARRANGEMENTS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES.

A.   Arbitrators who are to be compensated for their services or reimbursed for their expenses shall adhere to standards of integrity and fairness in making arrangements for such payments.

B.   Certain practices relating to payments are generally recognized as tending to preserve the integrity and fairness of the arbitration process. These practices include:

(1) Before the arbitrator finally accepts appointment, the basis of payment, including any cancellation fee, compensation in the event of withdrawal and compensation for study and preparation time, and all other charges, should be established. Except for arrangements for the compensation of party-appointed arbitrators, all parties should be informed in writing of the terms established.

(2) In proceedings conducted under the rules or administration of an institution that is available to assist in making arrangements for payments, communication related to compensation should be made through the institution. In proceedings where no institution has been engaged by the parties to administer the arbitration, any communication with arbitrators (other than party appointed arbitrators) concerning payments should be in the presence of all parties; and

(3) Arbitrators should not, absent extraordinary circumstances, request increases in the basis of their compensation during the course of a proceeding.

## CANON VIII. AN ARBITRATOR MAY ENGAGE IN ADVERTISING OR PROMOTION OF ARBITRAL SERVICES WHICH IS TRUTHFUL AND ACCURATE.

A.     Advertising or promotion of an individual's willingness or availability to serve as an arbitrator must be accurate and unlikely to mislead. Any statements about the quality of the arbitrator's work or the success of the arbitrator's practice must be truthful.

B.     Advertising and promotion must not imply any willingness to accept an appointment otherwise than in accordance with this Code.

*Comment to Canon VIII*

This Canon does not preclude an arbitrator from printing, publishing, or disseminating advertisements conforming to these standards in any electronic or print medium, from making personal presentations to prospective users of arbitral services conforming to such standards or from responding to inquiries concerning the arbitrator's availability, qualifications, experience, or fee arrangements.

## CANON IX. ARBITRATORS APPOINTED BY ONE PARTY HAVE A DUTY TO DETERMINE AND DISCLOSE THEIR STATUS AND TO COMPLY WITH THIS CODE, EXCEPT AS EXEMPTED BY CANON X.

A.     In some types of arbitration in which there are three arbitrators, it is customary for each party, acting alone, to appoint one arbitrator. The third arbitrator is then appointed by agreement either of the parties or of the two arbitrators, or failing such agreement, by an independent institution or individual. In tripartite arbitrations to which this Code applies, all three arbitrators are presumed to be neutral and are expected to observe the same standards  as the third arbitrator.

B.      Notwithstanding this presumption, there are certain types of tripartite arbitration in which it is expected by all parties that the two arbitrators appointed by the parties may be predisposed toward the party appointing them. Those arbitrators, referred to in this Code as "Canon X arbitrators," are not to be held to the standards of neutrality and independence applicable to other arbitrators. Canon X describes the special ethical obligations of party-appointed arbitrators who are not expected to meet the standard of neutrality.

C.      A party-appointed arbitrator has an obligation to ascertain, as early as possible but not later than the first meeting of the arbitrators and parties, whether the parties have agreed that the party-appointed arbitrators will serve as neutrals or whether they shall be subject to Canon X, and to provide a timely report of their conclusions to the parties and other arbitrators:

   (1) Party-appointed arbitrators should review the agreement of the parties, the applicable rules and any applicable law bearing upon arbitrator neutrality. In reviewing the agreement of the parties, party-appointed arbitrators should consult any relevant express terms of the written or oral arbitration agreement. It may also be appropriate for them to inquire into agreements that have not been expressly set forth, but which may be implied from an established course of dealings of the parties or well-recognized custom and usage in their trade or profession;
   (2) Where party-appointed arbitrators conclude that the parties intended for the party-appointed arbitrators not to serve as neutrals, they should so inform the parties and the other arbitrators. The arbitrators may then act as provided in Canon X unless or until a different determination of their status is made by the parties, any administering institution or the arbitral panel; and
   (3) Until party-appointed arbitrators conclude that the party-appointed arbitrators were not intended by the parties to serve as neutrals, or if the party-appointed arbitrators are unable to form a reasonable belief of their status from the foregoing sources and no decision in this regard has yet been made by the parties, any administering institution, or the arbitral panel, they should observe all of the obligations of neutral arbitrators set forth in this Code.

D.      Party-appointed arbitrators not governed by Canon X shall observe all of the obligations of Canons I through VIII unless otherwise required by agreement of the parties, any applicable rules, or applicable law.

CANON X.     EXEMPTIONS FOR ARBITRATORS APPOINTED BY ONE PARTY WHO ARE NOT SUBJECT TO RULES OF NEUTRALITY.

Canon X arbitrators are expected to observe all of the ethical obligations prescribed by this Code except those from which they are specifically excused by Canon X.

A. *Obligations under Canon I*
Canon X arbitrators should observe all of the obligations of Canon I subject only to the following provisions:

(1) Canon X arbitrators may be predisposed toward the party who appointed them but in all other respects are obligated to act in good faith and with integrity and fairness. For example, Canon X arbitrators should not engage in delaying tactics or harassment of any party or witness and should not knowingly make untrue or misleading statements to the other arbitrators; and

(2) The provisions of subparagraphs B(1), B(2), and paragraphs C and D of Canon I, insofar as they relate to partiality, relationships, and interests are not applicable to Canon X arbitrators.

B. *Obligations under Canon II*

(1) Canon X arbitrators should disclose to all parties, and to the other arbitrators, all interests and relationships which Canon II requires be disclosed. Disclosure as required by Canon II is for the benefit not only of the party who appointed the arbitrator, but also for the benefit of the other parties and arbitrators so that they may know of any partiality which may exist or appear to exist; and

(2) Canon X arbitrators are not obliged to withdraw under paragraph G of Canon II if requested to do so only by the party who did not appoint them.

C. *Obligations under Canon III*
Canon X arbitrators should observe all of the obligations of Canon III subject only to the following provisions:

(1) Like neutral party-appointed arbitrators, Canon X arbitrators may consult with the party who appointed them to the extent permitted in paragraph B of Canon III;

(2) Canon X arbitrators shall, at the earliest practicable time, disclose to the other arbitrators and to the parties whether or not they intend to communicate with their appointing parties. If they have disclosed the intention to engage in such communications, they may thereafter communicate with their appointing parties concerning any other aspect of the case, except as provided in paragraph (3).

(3) If such communication occurred prior to the time they were appointed as arbitrators, or prior to the first hearing or other meeting of the parties with the arbitrators, the Canon X arbitrator should, at or before the first hearing or meeting of the arbitrators with the parties, disclose the fact that such communication has taken place. In complying with the provisions of this subparagraph, it is sufficient that there be disclosure of the fact that such communication has occurred without disclosing the content of the communication. A single timely disclosure of the Canon X arbitrator's intention to participate in such communications in the future is sufficient;

(4) Canon X arbitrators may not at any time during the arbitration:

      (a) disclose any deliberations by the arbitrators on any matter or issue submitted to them for decision;

      (b) communicate with the parties that appointed them concerning any matter or issue taken under consideration by the panel after the record is closed or such matter or issue has been submitted for decision; or

      (c) disclose any final decision or interim decision in advance of the time that it is disclosed to all parties.

(5) Unless otherwise agreed by the arbitrators and the parties, a Canon X arbitrator may not communicate orally with the neutral arbitrator concerning any matter or issue arising or expected to arise in the arbitration in the absence of the other Canon X arbitrator. If a Canon X arbitrator communicates in writing with the neutral arbitrator, he or she shall simultaneously provide a copy of the written communication to the other Canon X arbitrator;

(6) When Canon X arbitrators communicate orally with the parties that appointed them concerning any matter on which communication is permitted under this Code, they are not obligated to disclose the contents of such oral communications to any other party or arbitrator; and

(7) When Canon X arbitrators communicate in writing with the party who appointed them concerning any matter on which communication is permitted under this Code, they are not required to send copies of any such written communication to any other party or arbitrator.

D.    *Obligations under Canon IV*
Canon X arbitrators should observe all of the obligations of Canon IV.

E.    *Obligations under Canon V*
Canon X arbitrators should observe all of the obligations of Canon V, except that they may be predisposed toward deciding in favor of the party who appointed them.

F.    *Obligations under Canon VI*
Canon X arbitrators should observe all of the obligations of Canon VI.

G.    *Obligations Under Canon VII*
Canon X arbitrators should observe all of the obligations of Canon VII.

H.    *Obligations Under Canon VIII*
Canon X arbitrators should observe all of the obligations of Canon VIII.

I.    *Obligations Under Canon IX*
The provisions of paragraph D of Canon IX are inapplicable to Canon X arbitrators, except insofar as the obligations are also set forth in this Canon.